IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL P., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 CV 2665 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Cheryl P.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c) and the parties have filed cross-motions for summary judgment [ECF Nos. 18, 23] pursuant to Federal Rule of

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Civil Procedure 56. For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 18] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 23] is granted.

## PROCEDURAL HISTORY

On January 23, 2013, Claimant filed her applications for DIB and SSI, alleging a disability onset date of December 30, 2007. (R. 216–23). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 83–144, 165–68). On December 22, 2015, Claimant appeared and testified at a hearing before ALJ Luke Woltering. (R. 41–71). At that time, she amended her disability onset date to December 12, 2011. (R. 38–41). ALJ Woltering also heard testimony on that date from impartial vocational expert ("VE") Diamond Warren. (R. 71–81). On February 26, 2016, ALJ Woltering denied Claimant's claims for DIB and SSI. (R. 11–26). The Appeals Council declined to review the case, and Claimant appealed. (R. 1–7).

In an opinion issued on August 22, 2018, this Court granted Claimant's motion and remanded her case for a more fulsome analysis of Claimant's treating physician's opinion and Claimant's subjective symptom statements. *See Virgen-Pierce v. Berryhill,* 2018 WL 4005193 (N.D. Ill. 2018). On remand, Claimant testified at a second hearing before ALJ Woltering on June 6, 2019. (R. 756–79). ALJ Woltering also heard testimony on that date from impartial vocational expert ("VE") Monika Dabrowiecka. (R. 779–88). On July 8, 2019, ALJ Woltering found Claimant was not disabled prior to December 17, 2016 but became disabled on that date and continued

to be disabled through June 14, 2017, after which Claimant was found disabled based upon a subsequent SSI application. (R. 830–47).

In finding Claimant not disabled prior to December 17, 2016, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that from December 12, 2011 until June 14, 2017, Claimant had not engaged in substantial gainful activity (R. 832). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 833). Specifically, Claimant had degenerative disc disease, degenerative joint disease and osteoarthritis bilaterally of the knee, obesity, depression, anxiety disorder, and mallet deformities in the fifth finger DIP joints. *Id.* The ALJ also acknowledged several non-severe impairments – urinary incontinence/frequency, diverticulosis, hemorrhoids, and a uterine prolapse – and considered the combined effect of those impairments in assessing the full extent of Claimant's limitations. *Id.*

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 833–35, 838). In particular, the ALJ considered listings 1.02, 1.04, 12.04, and 12.06 and evaluated whether the "paragraph B" or "paragraph C" criteria had been satisfied for the mental listings. *Id.* The ALJ determined listing 1.02 did not apply Claimant had not demonstrated any consistent signs of an inability to ambulate effectively as required by the listing, nor was there any evidence, in the ALJ's view, to support a

finding that Claimant's mallet deformity has prevented her from effectively performing fine and gross movements. (R. 834). Nor did listings 1.04A, B, or C apply, as Claimant did not have episodes of arachnoiditis, consistent signs of motor loss or loss of sensation, or the inability to ambulate effectively as required. (R. 834).

Regarding mental listings 12.04 and 12.06, the ALJ concluded the "paragraph B" criteria had not been satisfied, although Claimant had limitations in certain broad areas of functioning. (R. 834–35, 838). The ALJ noted a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others, concentration, persistence, or pace, and adapting or managing oneself. *Id.* But, because Claimant's impairments did not cause at least two "marked" limitations or one "extreme limitation," the ALJ concluded that the paragraph B" criteria were not satisfied. (R. 838). As to the "paragraph C" criteria, the ALJ determined the medical evidence of record did not show Claimant was receiving ongoing consistent mental health treatment that diminished the symptoms of her mental impairments, nor did Claimant lack the minimal capacity to adapt to changes in her environment. *Id.* So, the "paragraph C" criteria were not satisfied. *Id.*

The ALJ then found Claimant had the residual functional capacity ("RFC"), from December 12, 2011 until June 14, 2017, to:

> "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant needed a cane to ambulate. The claimant could not climb ladders, ropes, or scaffolds. The claimant could occasionally climb ramps and stairs. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. The claimant could understand, remember, and carry out short, simple work instructions and could sustain concentration to perform simple tasks. The claimant could adapt to occasional routine changes in the work setting. The claimant should not have to interact with the public." (R. 838).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a crossing guard and a guard. (R. 845). Because the mental and physical demands of this work exceeded Claimant's residual functional capacity, the ALJ concluded that Claimant would not be able to perform that past relevant work as actually or generally performed. *Id.* The ALJ then concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, she was capable of performing other work within the national economy prior to December 17, 2016 and that those jobs existed in significant numbers. (R. 846). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the sedentary exertional level, including film touch up inspector, lamp shade assembler, and microfilm document preparer. *Id.* The ALJ then found Claimant was not under a disability prior to December 17, 2016 but became disabled on that date when her age category changed. (R. 846–47). She continued to be disabled through June 14, 2017, when she was found disabled based on a subsequent application for supplemental security. *Id.* The Appeals Council declined to review the matter on March 1, 2020, (R. 743–49), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48

5

(1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL

6

5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. The Medical Opinion Evidence

#### A. Claimant's Treating Physician

The Court previously remanded for the ALJ to revisit the factors listed in 20 C.F.R. § 404.1527 and reevaluate Claimant's treating physician's opinion consistent

7

with that framework. *Virgen-Pierce*, 2018 WL 4005193, at *2–6. Claimant now contends the ALJ did not do enough to remediate that error, but the Court disagrees. The ALJ adequately addressed the required factors and minimally articulated his reasons for affording Dr. Strugala's opinion less than controlling weight, and so the Court will not disturb his reasoning for a second time.

Claimant filed her claim before 2017, meaning her treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If contrary evidence is introduced, however, "the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013) (quoting *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)) (internal quotations omitted); see also, *Ray v. Saul*, 2021 WL 2710377, at *2 (7th Cir. 2021). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus "too quickly find[s] disability." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). The ALJ must provide "good reasons" for discounting a treating physician's opinion, *Fair v. Saul*, 2021 WL 1711810, at *3 (7th Cir. 2021), and in so doing, must consider the length, nature, and extent of the treatment relationship, the frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support for the physician's opinion. *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010); *see also* 20

C.F.R. § 404.1527(c). So long as the ALJ minimally articulates his reasons and considers the proper factors, the decision to afford a treater's opinion less than controlling weight will stand. *Elder*, 529 F.3d at 415.

Consistent with the Court's remand, the ALJ revisited Dr. Strugala's opinion and afforded it varying degrees of weight based on the 20 C.F.R. § 404.1527 factors. The ALJ partially credited the portion of Dr. Strugala's opinion that concluded Claimant was limited in her ability to stand and walk and required the use of a cane, noting those portions of his opinion were supported by imaging studies of Claimant's lumbar spine and bilateral knees, as well as Dr. Strugala's examination notes documenting an antalgic gait, use of a cane, and limited knee and lumbar spine range of motion. (R. 842–43). To the remainder of Dr. Strugala's opinion, the ALJ assigned little weight, emphasizing that there was no evidence in Dr. Strugala's notes supporting a limitation in the ability to sit, lift the weight required of sedentary work, or other postural limitations. *Id.*

The ALJ explained that he discounted Dr. Strugala's opinions, either in whole or in part, because those opinions contrasted with Claimant's conservative course of treatment, the objective medical evidence, and Dr. Strugala's own treatment notes. (R. 842–43). Regarding Claimant's course of treatment, he noted Claimant's physical and mental symptoms were well-controlled with physical therapy, injections, and "*primarily* only Tylenol and Ibuprofen for pain, though it appears that the claimant was also prescribed Naprosyn and Tramadol for short periods." (R. 843) (emphasis in original) (citing R. 432, 447–48, 465, 468, 476, 479–81, 483, 485, 502, 635–37, 953–56, 972). And although he credited the fact that Dr. Strugala was "a treating source

9

physician, who had the opportunity to observe [Claimant] over time," he also properly emphasized that Dr. Strugala's treatment notes did not reflect objective findings consistent with the more extreme opinions Dr. Strugala rendered regarding Claimant's inability to work. (R. 843) ("…despite [Claimant's] issues with her lumbar spine, examinations indicate that [Claimant] retained 5/5 upper extremity strength and an otherwise normal musculoskeletal range of motion, which contradicts Dr. Strugala's opinion regarding [Claimant's] inability to lift the weight required of sedentary work, move her neck or perform postural limitations on even an occasional basis."); *see, e.g., Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (affirming the ALJ's decision declining to give a treating physician's opinion controlling weight where substantial evidence supported the ALJ's finding that the medical records, including the physician's own records, were inconsistent with the physician's opinion). In doing so, the ALJ performed his duty to "evaluate, not simply accept, medical evidence" and "critically evaluat[e] the doctors' opinions and the conflicting [medical] records." *Davis v. Barnhart,* 187 F. Supp. 2d 1050, 1057 (N.D. Ill. 2002); *see also, Thorps v. Astrue*, 873 F. Supp. 2d 995, 1005 (N.D. Ill. 2012) ("Of course an ALJ may not substitute his own judgment for a physician's without relying on other medical evidence on record. An ALJ, however, is not only allowed to, he must, weigh the evidence, draw appropriate inferences from the evidence, and, where necessary, resolve conflicting medical evidence.").

Nor was the ALJ required to give any deference to Dr. Strugala's opinion that Claimant could not work or perform even "low stress" jobs, as the ultimate issue of whether Claimant can work is reserved for the Commissioner. *Collins v. Astrue*, 324

F. App'x 516, 520 (7th Cir. 2009) (in contrast to a medical opinion, "a treating physician's administrative opinion—such as the applicant's residual functional capacity (for sedentary work, for example) or whether the applicant is 'disabled'—is not entitled to any particular weight because those determinations are 'reserved to the Commissioner.' "); 20 C.F.R. § 404.1527(d)(2) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 404.1527 (d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.").

In sum, the ALJ evaluated Dr. Strugala's opinion in light of the record as a whole and "minimally articulated" his decision to discount it. *Pavlicek,* 994 F.3d at 781. The Court sees no reason to disturb the ALJ's reasoned assessment now.

### B.     The State Agency Medical Consultants' Opinions

Claimant also challenges the ALJ's decision to give great weight to the state agency medical consultants' opinions. (R. 842). The regulations consider state agency medical consultants like Dr. Phillip Galle and Dr. Young-Ja Kim to be "highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), although an ALJ still must examine the § 404.1527(c) factors and minimally articulate his reasoning for crediting a non-treating state agency medical opinion. *Grotts v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022). Here, substantial evidence supports the ALJ's decision to give greater weight to Dr. Galle's and Dr. Kim's opinions than to that of Dr. Strugala. The ALJ explained that Dr. Galle and Dr. Kim had significant knowledge of program rules and regulations and experience evaluating medical evidence under those criteria. (R. 842). Their opinions were

11

consistent with the longitudinal record evidence showing Claimant only occasionally reported any gait or spinal abnormality, and with Claimant's treatment notes that lacked any evidence of a neurological or musculoskeletal deficit. *Id.* The ALJ was permitted to afford great weight to Dr. Galle's and Dr. Kim's opinions as consulting physicians, particularly after the ALJ determined their opinions were consistent with the objective medical evidence. *Primm v. Saul,* 789 F. App'x 539, 545 (7th Cir. 2019) ("[a]n ALJ is entitled to credit the opinion of a non-treating physician over a treating physician if doing so is supported by evidence."); *see also, Prill*, 23 F.4th at 751; *Zoch*, 981 F.3d at 602; *Ketelboeter*, 550 F.3d at 625. That Dr. Galle and Dr. Kim's did not have the opportunity to review a single MRI from November 2016 does not convince the Court it should disturb the ALJ's assessment of the consultants' opinions in light of the record as a whole, which he thoroughly reviewed.

## II. Claimant's Subjective Symptom Statements

The Court previously faulted the ALJ for discounting Claimant's subjective complaints based solely on the objective medical evidence, and for impermissibly equating Claimant's activities of daily living with the ability to perform full-time work. *Virgen-Pierce*, 2018 WL 4005193, at *6–8. Claimant argues the ALJ recommitted this error on remand and did not explain to Claimant's satisfaction why he once again discounted her testimony. Not so. The ALJ followed the SSR 16-3p factors the second time around and adequately explained his conclusion that the objective medical evidence, Claimant's daily activities, level of pain or symptoms, and functional limitations did not corroborate Claimant's subjective symptom statements.

12

An ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy*, 759 F.3d at 816 (patently wrong "means that the decision lacks any explanation or support."). SR 16-3p[3] outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. "The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors,

---

[3] Because the ALJ issued his ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. But SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another" – instead, a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *McCammond v. Colvin*, 2016 WL 3595736 at *3 (N.D. Ill. 2016). SSR 16-3p simply reaffirmed the focus on the regulatory language regarding symptom evaluation and clarified that the "subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p; *see also Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016). The case law discussing both SSR 16-3p and SSR 96-7p therefore is informative on this point.

medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7–8 (Oct. 25, 2017).

An ALJ may view discrepancies with the medical record as probative of symptom exaggeration, *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008), and the ALJ properly did so here as one factor weighing against Claimant's testimony. As the ALJ described, imaging studies and examination notes were at odds with the severity of limitations Claimant described in her disability application and to which she testified at her 2015 and 2019 hearings. Claimant complained of depression, anxiety, and disabling pain from her lumbar degenerative disc disease, as well as from her degenerative joint disease and osteoarthritis of the bilateral knees. And while the physical examinations of record did support the existence of these impairments, the severity of the symptoms resulting therefrom was not borne out by the medical records. (R. 839–41).

Regarding Claimant's physical limitations, the ALJ emphasized that despite Claimant's testimony in 2015 that she could not sit for more than ten to twenty minutes and testimony in 2019 that she could only sit for variable periods but not sit up straight in a chair and would need to stretch and walk around for ten minutes after sitting less than an hour, there were no treatment notes during the relevant period suggesting difficulty sitting down. (R. 836–37, 839). Similarly, although Claimant reported mental limitations in the form of disabling anxiety manifested as chest tightness, body shakiness, shortness of breath, palpitations, increased fear, and impaired sleep with agoraphobia, (R. 840–41), the longitudinal record showed Claimant's concentration, memory, mood, and affect was generally well-controlled

14

with psychotropic medication. (R. 841). The ALJ credited that she experienced increased anxiety symptoms when she was not consistent with her medication, but also noted that within a few months of symptom exacerbation and after Claimant once again became compliant with her psychotropic medication, Claimant's anxiety and depression stabilized. *Id.* On balance, Claimant's mental status examinations showed Claimant was stable, oriented, and with average attention and concentration, which was at odds with her testimony. *Id.* The state agency consultants' opinions similarly contrasted with Claimant's testimony, which the ALJ correctly considered. (R. 843).

In the ALJ's assessment, the severity of Claimant's physical and mental symptoms was simply inconsistent with the objective evaluations from Claimant's various treating physicians showing mostly normal mental status evaluations and the physical ability to perform sedentary work with additional restrictions, such as those incorporated into the RFC. The ALJ was entitled to consider that those medical findings conflicted with Claimant's subjective description of her symptoms, for as the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Likewise, the ALJ permissibly considered the course of Claimant's treatment, 20 C.F.R. § 404.1529(c)(3)(v), and the longitudinal record evidence showing Claimant managed her mild to moderate symptoms with conservative treatment and psychotropic medication management. (R. 841–43).

The ALJ also permissibly relied on evidence of Claimant's activities of daily living without stepping over the line into equating such activities with the ability to perform full-time work. As this Court previously cautioned, there are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill,* 23 F.4th at 748, and ALJs should not "equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin,* 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" *Id.* (quoting *Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016)). The ALJ did so here when he noted the difference between Claimant's assertions of disabling pain and the activities she performed daily. (R. 841–42) ("[Claimant's] ability to perform daily activities, such as playing computer games, watching television, attending church, shopping in stores, paying bills and managing money, are not limited to the extent one would expect, given the complaints of disabling mental symptoms and limitations including reduce social tolerance, isolationism, poor concentration and a need for time off-task. In so noting, I acknowledge that the District Court previously took issue with references to [Claimant's] activities of daily living being utilized to support a finding that [Claimant] could sustain full time work. However, in this decision, I am not referencing [Claimant's] activities of daily living to show that [Claimant] could perform full time work. Instead, [Claimant's] recitation of her activities of daily living is only being utilized to show that [Claimant's] description of her activities exceeds

16

her alleged limitations in performing specific functions such as sitting, using her hands, interacting with others and maintaining concentration.").

Finally, the ALJ noted that internal inconsistencies in Claimant's subjective symptom statements gave him pause as to the reliability of the information she provided in support of her disability claim. (R. 841–42) ("For example, at the hearing in June 2019, [Claimant] testified that as of the alleged onset date, she could not sit for even an hour and she could not sit at all in straight back chair. However, in a Function Report completed by [Claimant], she previously reported that she attended church without noted problems sitting in a pew during services. As another example, at the hearing, [Claimant] testified that due to issues with her fingers, she could not type and had issues grasping things as of the alleged onset date. However, in a Function Report completed by [Claimant], she reported activities including playing computer games and cooking meals.") (internal citations omitted). This too fell within the purview of SSR 16-3p and the ALJ properly considered it. *Diantha S. v. Saul*, 2021 WL 2072137, at *7 (N.D. Ill. 2021) ("The ALJ and the Appeals Council considered Claimant's pain and evaluated the relevant evidence of record, including the objective medical evidence, Claimant's course of treatment, Claimant's activities of daily living, and the internal inconsistencies in Claimant's own testimony.").

In sum, the ALJ did not err in weighing Claimant's self-reported daily activities, the objective medical record, Claimant's course of treatment, and internal inconsistencies in Claimant's testimony, and then concluding that these factors belied the severity and limitations of her claimed symptoms. The ALJ need only explain his subjective symptom evaluation "in such a way that allows [the Court] to determine

17

whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here.

### III. Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Claimant argues the RFC is flawed because it does not address her need to elevate her lower extremities during the workday. But the Court sees no medical evidence in the record, nor does Claimant point to any, that supports Claimant's asserted need to elevate her leg during the day. The ALJ specifically considered the Claimant's testimony in 2015 that she elevates her leg on a table when she sits on her couch in order to reduce pain, but no doctor ever opined such a limitation was necessary, nor did Claimant mention this purported need to elevate her leg to any treating physician during the relevant period. This is fatal to Claimant's assertion of

18

error on this point, as the ALJ need only include limitations that are supported by the medical record. *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022) (citing *Deborah M., v. Saul,* 994 F.3d 785, 791 (7th Cir. 2021)); *see also, Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

Claimant's RFC argument does little more than restate her subjective symptom complaints and conclude they are work preclusive, which does not persuade the Court that remand is required. Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019). The ALJ did not err in his RFC decision here.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 18] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 23] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  November 8, 2022